COMMONWEALTH *vs.* INHABITANTS OF TAUNTON.

Under *St.* 1851, *c.* 338, the inhabitants of Taunton are authorized to build the bridge therein mentioned over Taunton Great River without a draw.

INDICTMENT for a nuisance, in obstructing the navigation of Taunton Great River with a bridge.

It was admitted and proved upon the trial in the superior court, before *Ames*, J., that the Taunton Great River is navigable for lighters, boats and scows, and for a steam-tug used in towing them, at the place where it is crossed by the bridge in question, and also for a very considerable distance above the bridge; that the ebb and flow of the tide extend above this locality; that large quantities of lumber, coal, iron and other heavy commodities are transported under and above the bridge; that the business and business requirements above the bridge, in the towns of Taunton and Raynham, have largely increased within twelve years past, and are regularly increasing; that a short distance above the bridge there is a greater depth of water and greater breadth of the river than at any other place in the vicinity, and a spacious basin wherein vessels of greater draught than now can be passed above the bridge might lie conveniently and safely, and might be turned with convenience, which cannot be done below; that this place is eligible for wharves, and that wharf accommodation above the bridge would very much facilitate the transaction of business in the vicinity; that this locality above the bridge would be nearer to a very large part of the population of Taunton; that the more shallow portion of the river about the bridge could be dredged, so as to open a channel to the deeper water above, by an expenditure of

money which individuals interested were ready to provide; that the transportation of commodities to localities above the bridge is prevented, hindered and delayed by reason of the small space for passage under the bridge, and because sailing vessels cannot pass the bridge; that a draw in the bridge would not only facilitate the present business, but that business would be considerably increased by such accommodation; that more than sixty years ago the legislature made a grant of land in Maine to the town of Taunton, to enable them to deepen and improve the channel of the river; that the money derived from a sale of this land was expended in thus improving the navigation of the river, as well above as below the bridge in question, and a draw was constructed in this bridge so that vessels passed up through the same, and was maintained for over twenty years, but was afterwards discontinued, and none now exists; that the basin referred to cannot be used for the above purpose until the excavations above named are made, and the water under the bridge is so shallow that the vessels ordinarily coming up the river cannot pass, unless such excavations are made; that the scows, boats, &c., which now pass the bridge also pass a railroad bridge, which has no draw, which is about one fourth of a mile above this bridge, and also another bridge, which is about three fourths of a mile above the railroad bridge, and is also without a draw, both of which are above the basin referred to; that there has been no draw in this bridge for about thirty years, and the draw which was formerly there was not used for many years before it was removed; and that the bridge is maintained by the defendants.

The question submitted to the court was, whether upon these facts the bridge in question is a nuisance by reason of having no draw; and the judge ruled that the indictment could be maintained, and a verdict of guilty was returned, and the case was reported for the determination of this court.

*C. I. Reed*, for the defendants, cited *St.* 1851, *c.* 338; *Commonwealth* v. *New Bedford Bridge*, 2 Gray, 339, and cases cited.

*Foster*, A. G., for the Commonwealth, cited *Commonwealth* v.

*Upton*, 6 Gray, 473 ; *Vinton* v. *Welsh*, 9 Pick. 87, and cases cited ; *Commonwealth* v. *New Bedford Bridge*, 2 Gray, 339, and cases cited.

BIGELOW, C. J. The authority of the legislature to empower persons or corporations to erect and maintain bridges over navigable waters within the limits of the Commonwealth, and thereby to obstruct in a greater or less degree the free passage of vessels and boats over and through the same, is clear and unquestionable. *Commonwealth* v. *Breed*, 4 Pick. 460. *Commonwealth* v. *Proprietors of New Bedford Bridge*, 2 Gray, 339, and cases cited. Nor can we entertain any doubt that, by the fair import of the terms of *St.* 1851, *c.* 338, § 1, under which the defendants built the structure which constitutes the obstruction and nuisance set out in the indictment, they were authorized to erect it without a draw for the passage of vessels. Not only is there no express requirement in the act that a draw shall be built, such as is always inserted in enactments authorizing the construction of a bridge over navigable waters when the legislature intend to secure a free passage for vessels, but there is in effect a permission given to the defendants to build the bridge continuously over the river, and at a certain height or distance above the surface of the water in the two channels. The purpose of such a permission is manifest. It is to secure a fixed and permanent space between the under part of the bridge and the water in the channel, for the more convenient passage of boats, scows, and rafts, which would be wholly unnecessary and useless if an open draw was intended to be prescribed as a part of the erection authorized by the statute. This interpretation of the act acquires additional strength from the fact that all previous bridges erected at the same place over the river from the year 1760 to the year 1851, when the statute above cited was passed, were built without draws. The main purpose of the last named act was to authorize the defendants " to alter, enlarge and reconstruct " the bridge then existing over the river. The particulars in which the alteration and enlargement were to be made in the reconstruction were specified in the statute, but no provision is inserted requiring it

to be rebuilt with a draw. This omission is significant to show that the legislature did not intend to impose such a burden on the defendants.

It follows that the defendants, having built their bridge in conformity to the authority conferred on them by law, have caused no unlawful obstruction of the river, and are not guilty of the nuisance charged in the indictment.

*Verdict set aside.*